# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CHARLES E. STULTZ, JR,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

    Defendant.

Case No. 13-CV-766-CVE-FHM

## REPORT AND RECOMMENDATION

Plaintiff, Charles E. Stultz, Jr., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's September 26, 2011, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") B.D. Crutchfield was held April 24, 2013. By decision dated May 28, 2013, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on October 22, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 46 years old on the alleged date of onset of disability and 49 on the date of the ALJ's denial decision. He has a high school education and formerly worked as a cook's helper and as a hand packager. He claims to have been unable to work since June 1, 2011 as a result of arm and knee impairments, obesity, mood disorder, and a learning disorder.

## The ALJ's Decision

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), but is limited to simple routine tasks and only occasional contact with the public. The ALJ found that Plaintiff is able to perform his past relevant work as a cook's helper and hand packager as he performed the work, but not as listed in the Dictionary of Occupational Titles (DOT). Further, based on the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step four of the five-step evaluative sequence for

2

determining whether a claimant is disabled, with an alternative step five determination. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ: failed to properly evaluate and consider the medical evidence; erred at steps four and five of the evaluative sequence; failed to perform a proper credibility determination; and failed to properly consider and discuss his severe obesity.[2]

## **Analysis**

### Consideration of Medical Evidence

There is no merit to Plaintiff's various contentions that the ALJ failed to properly consider and evaluate the medical evidence. According to Plaintiff, reports from the consultative examiner support greater limitations than those the ALJ included in the RFC. Plaintiff points to the consultative examiner's notation of Plaintiff's hypertension, dyslipidemia, history of gout, family history of Alzheimer's disease, bipolar disorder per history, and "Poor Folstein Mental Status Exam," as supporting his claims of syncope, memory problems, and limitations in standing and walking. [R. 380-81; Dkt. 12, p. 3]. Except for the results of the Folstein mental status exam, these notations are not findings made by the consultative examiner, but information about Plaintiff's medical history and that of his family. The ALJ accurately noted that the consultative examiner's physical findings were essentially normal and gave great weight to these findings for the reason that the

---

[2] The undersigned rejects the contentions made in Plaintiff's Reply Brief, [Dkt. 17], that the Commissioner's brief consists mainly of impermissible *post hoc* justification for the ALJ's decision. Rather, the undersigned views the Commissioner's brief as merely responding to Plaintiff's allegations.

consultative examiner observed Plaintiff in a clinical setting and his findings are supported by the medical record.  [R. 17-18].

Plaintiff seems to argue that findings in the record of plantar fasciitis of the left foot and knee pain, tenderness and joint instability are inconsistent with the ALJ's finding that his alleged arm and knee impairments were non-severe.  The ALJ noted that in the several function reports completed by Plaintiff and his wife, there was no mention of any physical impairments.  Further, the ALJ noted that Plaintiff was treated on only one occasion for plantar fasciitis and had no further complaints.  [R. 18].  With regard to complaints of bilateral knee pain, the ALJ noted that on September 4, 2012, Plaintiff reported twisting his knee three days earlier and was evaluated for knee pain on September 4, 2012.  Plaintiff does not point the court to any evidence of continued complaints of knee pain to support further limitations than the RFC for light work.

Plaintiff argues that the ALJ erred in saying she gave great weight to the consultative examiner's report when the ALJ failed to discuss the examiner's finding that Plaintiff scored poorly on the Folstein mental status examination.  Plaintiff also states that the ALJ should have recontacted the consultative examiner to obtain an opinion about whether any functional limitations would result from poor scores on the Folstein examination.  The undersigned further finds that there is no merit to Plaintiff's argument that the ALJ had the duty to recontact the consultative examiner.  Without any discussion of their holdings, Plaintiff cited *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002) and *White v. Barnhart*, 287 F.3d 903 (10th Cir. 2003) in support of her assertion that the ALJ had the duty to recontact the consultative examining physician.  These decisions interpreted the former version of 20 C.F.R. § 416.927(e) which required an ALJ to recontact a treating physician

4

in certain circumstances. However, 20 C.F.R. § 416.927(e) was amended in February 2012 and was not in effect when the ALJ issued her decision in May 2013. The currently applicable regulations about recontacting a physician, 20 C.F.R. § 404.1520b(c) and 20 C.F.R. § 416.920b(c), provide:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
> > (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
> >
> > (2) We may request additional existing records (see § 404.1512);
> >
> > (3) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
> >
> > (4) We may ask you or others for more information.
>
> (d) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you

are disabled, we will make a determination or decision based
on the evidence we have.

20 CFR § 404.1520b. The ALJ did not mention the Folstein results, but the decision does demonstrate that the record contained sufficient evidence to make the disability determination.

In addition to a physical consultative examination, Plaintiff also underwent a mental consultative examination with Johna Smasal, Ph.D. [R. 301-306]. The ALJ accurately summarized Dr. Smasal's report and gave great weight to her opinion. [R. 22-23]. The ALJ noted Dr. Smasal's opinion:

> [T]he claimant's difficulties were likely to be better managed under supportive supervision and with proper intervention. There were no obvious barriers to his capacity to perform simple, routine tasks was readily noted by Dr. Smasal."

[R. 23, 304]. The undersigned finds no error in the ALJ reliance on the thorough examination and report by Dr. Smasal, rather than the Folstein mental status exam score reported by the physical consultative examiner. The record also contains the mental RFC form completed by the state Disability Determination Service (DDS) expert who reviewed Plaintiff's records and rendered an opinion about how the ability to work was affected by Plaintiff's mental impairments. [R. 361-364]. The DDS expert found that Plaintiff can perform simple and some complex tasks, can relate to others on a superficial work basis, and can adapt to a work situation. The ALJ's RFC findings as to Plaintiff's mental abilities were thus supported by substantial evidence in the record.

Plaintiff argues that Dr. Smasal's comment that Plaintiff's "difficulties are likely to be better managed under supportive supervision and with proper intervention," [R. 304], is a

6

limitation that precludes competitive work. [Dkt. 12, p. 4]. Plaintiff argues that the ALJ's analysis ignored this comment and the vocational expert testimony that frequent intervention by a supervisor is more consistent with supported or a sheltered workshop type environment. [Dkt. 12, p. 4; R. 62]. Plaintiff's argument fails to take into account that Dr. Smasal also concluded : "No obvious barriers to his capacity to perform simple, routine tasks was readily noted." [R. 304]. This statement directly follows the comment about supportive supervision Plaintiff would have the court focus upon. Significantly, Dr. Smasal did not say that Plaintiff needed a sheltered workshop environment. Dr. Smasal said that Plaintiff had the capacity to perform simple, routine tasks. This opinion supports the ALJ's RFC finding. The possibility of another interpretation of Dr. Smasal's opinion that may support a different result does not deprive the ALJ's findings of substantial support in the evidence. The court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and brackets omitted).

Plaintiff argues that the ALJ's decision should be reversed because the ALJ ignored the diagnostic opinions of Plaintiff's treating physician, Naveen Kumar, M.D. [Dkt. 12, p. 5]. The ALJ included Dr. Kumar's notes in the summary of the medical record, including the diagnoses that Plaintiff says the ALJ ignored. [R. 23]. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The undersigned finds that the ALJ appropriately focused on the work-related functional limitations related to the diagnoses in the record.

Plaintiff also asserts that the ALJ failed to properly consider the Global Assessment of Functioning (GAF) scores in the record. According to Plaintiff, the ALJ is required to supply "good reasons" for rejecting consideration of GAF scores and GAF scores must be evaluated as opinions of treating sources. [Dkt. 12, 5]. The cases Plaintiff cited for these propositions, *Anderson v. Astrue*, 319 Fed. Appx. 712 (10th Cir. 2009) and *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003) do not even mention GAF scores.

The GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges. The GAF permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed. 2000)("DSM-IV-TR). The DSM-IV-TR instructs that the GAF scale has two components: the first part covering symptom severity, and the second part covers functioning. If <u>either</u> the symptom severity <u>or</u> the level of functioning falls within the range, a GAF within that range should be assigned. And, where the symptom severity and level of functioning are discordant, the GAF rating should reflect the worse of the two. *Id.* at 32-33. It is clear from the GAF definition, that the GAF score standing alone is not necessarily an indicator of the

8

ability to work. Furthermore, the Tenth Circuit has explained it is not necessary for the ALJ to specifically mention or adopt every GAF score in the decision. *See Luttrell v. Astrue,* 453 Fed.Appx. 786, 791–92 (10th Cir. 2011), *Butler v. Astrue,* 412 Fed.Appx. 144, 147 (10th Cir. 2011), *Holcomb v. Astrue,* 389 Fed.Appx. 757, 759 (10th Cir. 2010)(GAF scores taken alone do not establish an impairment serious enough to preclude an ability to work).[3] The GAF scores in this case were not linked to any work-related limitations identified in the treatment records. The ALJ clearly considered the medical evidence of Plaintiff's mental health treatment and the RFC included restrictions to accommodate Plaintiff's limitations which are supported by substantial evidence. The court finds no error in the ALJ's treatment of the GAF scores.

Hypothetical Questioning of the Vocational Expert

Plaintiff argues that the ALJ's decision should be reversed because the hypothetical question asked of the vocational expert failed to include all of his limitations. The RFC includes the limitation of "only occasional contact with the public," [R. 20], but the question asked of the vocational expert did not contain any restrictions on contact with the public. [R. 60-61]. The discrepancy between the hypothetical question and the RFC is troublesome because "testimony elicited by hypothetical questions that do not relate with precision all the claimants' impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991). However, the undersigned finds that in this case the error was harmless

---

[3] Given the cited Tenth Circuit authority on the subject of GAF scores, the undersigned sees no reason to address the decision by a court in the Northern District of Iowa that Plaintiff cited in his Reply Brief which relied on some internal document issued by the Social Security Administration. [Dkt. 17, p. 1-2].

because the jobs identified by the vocational expert do not require any significant interaction with others.[4] The ALJ's omission of the limitation of only occasional public contact from the hypothetical questioning of the vocational expert, while error, is harmless because the omission does not undermine the ALJ's conclusion that Plaintiff was capable of performing work consistent with the RFC finding as none of the jobs identified by the vocational expert require public contact, or even significant interaction with others. Furthermore, no principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to believe that the remand might lead to a different result. *See Moua v. Colvin,* 541 Fed. Appx. 794, 798 (10th Cir. 2013). Since the vocational expert identified jobs with no significant interaction with others, there is no reason to believe that remand for correction of the ALJ's error would lead to a different result.

Likewise, Plaintiff's contention that the case should be remanded for the reason that the ALJ failed to include any limitation on contact with co-workers and supervisors in the RFC and hypothetical questioning, [Dkt. 12, p. 6], does not present a reason to remand the case. The mental RFC assessment completed by the DDS psychologist stated that Plaintiff could relate to coworkers and supervisors on a superficial work basis. [R. 363]. Again, the DOT description of the jobs identified reflects that the jobs do not require a high degree of teamwork or interaction with others.

---

[4] Small product assembler, *Dictionary of Occupational Titles* (DOT) # 706.684-022; motel housekeeper DOT # 323.687-014; electrical assembler DOT # 729.687-010. Each job has a "people" rating from 0, which involves mentoring, to 8, which involves taking instructions and helping. 8 is the lowest rating. DOT, Appendix B, Explanation of Data, People, and Things, 1991 WL 688701. The "people" rating for each of the jobs identified by the vocational expert in this case is 8. For each of the jobs, the DOT rates even the lowest level of "people" rating as "not significant."

Plaintiff argues for reversal because the RFC for light physical exertion is not supported by any doctor's opinion. There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; see, e.g ., *Wall v. Astrue,* 561 F.3d 1048, 1068–69 (10th Cir. 2009)(upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

Plaintiff also argues that the ALJ failed to account for the moderate difficulties in social functioning and limitations in concentration, persistence, or pace. There is no merit to this contention. As required when there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ followed the procedure for evaluating mental impairments set forth in the regulations and documented the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v.*

11

*United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The PRT procedure required the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C). These "paragraph B" limitations are not an RFC assessment, rather they rate the severity of mental impairments at steps 2 and 3 of the evaluative sequence.

Plaintiff argues that the ALJ's decision should be reversed because the hypothetical question and the RFC did not include the ALJ's PRT finding of moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace. [Dkt. 12, pp. 7-8]. However, those findings are not expressed in terms of work-related limitations and consequently are not appropriate for inclusion in hypothetical questioning of the vocational expert. *See e.g. Chrismon v. Colvin*, 531 Fed.Appx. 893, 897-898 (10th Cir. 2013)(discussing difference between PRT findings and RFC findings). Rather, it is appropriate to include the work-related limitations that flow from those findings, which the ALJ did in this case.

The Mental Residual Functional Capacity Assessment form completed by the DDS psychologist breaks down the ability to maintain sustained concentration and persistence into eight separate work-related abilities. [R. 361-62]. One such ability is "the ability to carry out detailed instructions." [R. 361]. In that area Plaintiff was found to be "moderately limited." *Id.* Plaintiff was not found to be limited in any other work-related ability under the category of maintaining sustained concentration and persistence. In particular, the undersigned notes that Plaintiff was found to have no significant limitation in the "ability to

carry out very short and simple instructions." [R. 361, 363]. By limiting Plaintiff to the performance of simple routine tasks, the ALJ fully incorporated the work-related limitations that flow from the "paragraph B" finding of moderate difficulty with concentration, persistence, or pace into the hypothetical question and the RFC. [R. 20]. The mental RFC assessment form breaks down social interaction into five separate work-related abilities. [R. 362]. The only area where Plaintiff was found to have a limitation was in the area of the ability to interact appropriately with the general public, where Plaintiff had a moderate limitation. [R. 362]. The RFC limitation of only occasional contact with the public accounts for this limitation. [R. 20]. Further, as previously discussed, the jobs identified by the ALJ required no public contact. The undersigned finds therefore that the ALJ did not, as Plaintiff suggests, fail to include his own findings of mental restrictions in the hypothetical question and RFC.

## Credibility Determination

There is no merit to Plaintiff's assertion that the ALJ failed to perform a proper credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005) (citation, brackets, and internal quotation marks omitted). The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including: non-compliance with prescribed medication while Plaintiff reportedly did well on medication, [R. 24]; the lack of any physician opinion that Plaintiff is disabled or more limited than the RFC; functional reports of abilities; and daily activities reported. [R. 25].

13

Plaintiff offers arguments against the factors cited by the ALJ in support of his credibility finding. The undersigned views those arguments as an invitation to engage in impermissible reweighing of the evidence. As the Tenth Circuit has instructed, that invitation must be declined. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 735-36 (10th Cir. 2012)(citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

<u>Consideration of Obesity</u>

Contrary to Plaintiff's allegations, the ALJ's decision demonstrates he considered Plaintiff's obesity. The ALJ discussed Plaintiff's obesity in connection with consideration of the Listings of Impairments at step three of the evaluative sequence. [R. 18-19]. As previously discussed, the ALJ's RFC finding is supported by substantial evidence.

**Conclusion**

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before February 12, 2015.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 29th day of January, 2015.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE