## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHARLES E. STULTZ, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0766-CVE-FHM** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 18) of Magistrate Judge Frank

H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social

Security Administration (the agency) to deny plaintiff's claim for disability benefits. Plaintiff has

filed an objection (Dkt. # 22) to the report and recommendation, and he seeks an award of benefits

or, alternatively, remand for further proceedings. Defendant has not filed a response to plaintiff's

objection, and the time to do so has expired.

## I.

Plaintiff applied for disability benefits on September 26, 2011, alleging that he became

disabled on June 1, 2011. Dkt. # 10-5, at 2. On the date of application, plaintiff was forty-six years

old. Id. He originally alleged that "mental problems" limited his ability to work, Dkt. # 10-6, at 6,

although he later expanded his allegations to include physical impairments. Dkt. # 10-2, at 18. The

claim was denied initially and upon reconsideration, at which point plaintiff sought a hearing before

an administrative law judge (ALJ). Id. at 16. That hearing was held on April 23, 2013. Id.

At the hearing, plaintiff testified as to his impairments and the restrictions they placed on his life. Plaintiff was six feet tall and weighed 245 pounds. Id. at 40. He lived with his wife and stepchildren, and his last job, with a temporary agency, lasted only a few days. Id. at 42, 46. His final long-term employment ended in June 2011, when he was fired for "not getting along, I guess." Id. at 52. Plaintiff testified to experiencing pain in his right arm, some difficulty walking as a result of weakness in his right knee, and an injury to one foot. Id. at 50, 52. He also reported significant problems with his memory and his ability to interact with others appropriately. Id. at 52, 55-56.

Vocational expert (VE) Bonnie Ward, M.A. in Human Services Counseling, also testified at the hearing. Dkt. # 10-4, at 50. The ALJ presented the VE with a hypothetical question about a person able to perform light work but limited to "simple, routine tasks." Dkt. # 10-2, at 61-62. The VE testified that the hypothetical person could return to plaintiff's past work as plaintiff had performed it. Id. at 62. The VE also stated that the hypothetical person could perform other occupations existing in significant numbers in the national economy, and she provided examples. Id. When plaintiff's counsel asked whether the hypothetical person would be able to work with the additional restriction of "supportive supervision with proper intervention," the VE testified that the person would neither be able to return to plaintiff's past work nor pursue other competitive employment. Id. at 63.

The ALJ issued her decision on May 28, 2013. Id. at 28. She found that plaintiff had the following severe impairments: "obesity; mood disorder, NOS; learning disorder, NOS; and alcohol abuse in remission." Id. at 18. She determined that plaintiff's alleged arm, knee, and foot impairments were not "severe" under the applicable regulations. Id. Great weight was given to the opinion of Raffi David Karapetian, D.O., who performed a physical consultative examination of

plaintiff at the agency's request. Id. at 18-19. Dr. Karapetian found that plaintiff could move his extremities well, could manipulate paperclips without difficulty, had no difficulty moving around the room, and "ambulate[d] with a stable gait at an appropriate speed without use of assistive devices." Dkt. # 10-7, at 116. He also assessed plaintiff's cognitive abilities with a "Folstein MiniMental State Exam" (Folstein exam);[1] plaintiff scored a 19 on the Folstein exam, which Dr. Karapetian considered "[p]oor." Id. Dr. Karapetian noted that plaintiff's "thought processes appear slow and poor" and that plaintiff "did not remember his age and other significant events recently." Id. The ALJ did not discuss either the Folstein exam or Dr. Karapetian's cognitive observations.

The ALJ concluded that plaintiff's severe impairments did not meet or exceed a listing in the regulations, so she proceeded to assess plaintiff's residual functional capacity (RFC) to work. She determined that plaintiff "has the residual functional capacity to perform light work as defined in CFR 404.1567(b) . . . . He is limited to simple routine tasks and only occasional contact with the public." Id. at 21. The ALJ then recounted the evidence on which she relied in making that assessment. She summarized plaintiff's testimony at the hearing, the function report completed by plaintiff's wife, and the remaining medical evidence. Id. at 22-26. The ALJ described the medical records and treatment notes provided by plaintiff's treating physicians, including diagnoses of "bipolar disorder type I most recent episode mixed with psychotic features" and "major depressive disorder with psychotic features and posttraumatic stress disorder." Dkt. # 10-2, at 24-25.

---

[1]     "The Folstein Mini-Mental Status [sic] Examination is a test commonly used to grade a patient's cognitive state. The mean score for 'normal' individuals is 27.6 [out of 30]." Martel v. U.S. Social Sec. Admin., Civil No. 13-cv-48-PB, 2013 WL 6068241, at *3 n.5 (D.N.H. Nov. 18, 2013) (citing Marshal F. Folstein et al., "Mini-Mental State": A Practical Method for Grading the Cognitive State of Patients for the Clinician, J. Psychiatric Res. (Nov. 1975)).

The ALJ then recounted the opinion of Johna Kay Smasal, Ph.D. in clinical psychology, who performed a psychiatric consultative examination of plaintiff. Id. at 24. Dr. Smasal noted that, while plaintiff "endorsed many cognitive difficulties," he passed a cognitive assessment. Dkt. # 10-7, at 39. In her report, Dr. Smasal stated that "[plaintiff's] difficulties are likely to be better managed under supportive supervision and with proper intervention. No obvious barriers to his capacity to perform simple, routine tasks was [sic] readily noted." Id. Based on plaintiff's history and her examination, Dr. Smasal listed plaintiff's diagnoses as "Mood Disorder NOS Both," "Alcohol Abuse in Remission Both," and "L[earning] D[isability] NOS Both." Id. at 40. The ALJ gave great weight to Dr. Smasal's opinion. Dkt. # 10-2, at 24.

The ALJ also gave great weight to the RFC assessments completed by experts from the Department of Disability Services. Id. at 26. Deborah Hartley, Ph.D., completed a mental RFC assessment of plaintiff based on his medical records, as well as a psychiatric review technique form. Dkt. # 10-7, at 96-113. Dr. Hartley concluded that plaintiff could "perform simple and some complex tasks," "relate to others on a superficial work basis," and "adapt to a work situation." Id. at 98. The ALJ gave great weight to Dr. Hartley's opinion, quoting her findings in the decision. Luther Woodcock, M.D., reviewed plaintiff's medical records, with attention to the allegations of a foot injury. Dkt. # 10-7, at 122. Dr. Woodcock concluded that "the physical findings are non-severe currently." Id. The ALJ gave great weight to Dr. Woodcock's opinion. Dkt. # 10-2, at 26.

The ALJ found that, with the assessed RFC, plaintiff could return to his past work as he had actually performed it. Id. The ALJ also found that plaintiff could perform work existing in significant numbers in the national economy, citing the occupations that the VE had identified. Id. at 27. Based on these findings, the ALJ concluded that plaintiff was not disabled. Id. at 28. The

Appeals Council denied plaintiff's request for review, making the ALJ's decision the agency's final decision for purposes of appeal. Id. at 2. Plaintiff sought judicial review, Dkt. # 2, and the matter was referred to the magistrate judge for a report and recommendation. The report and recommendation recommends that this Court affirm the ruling of the ALJ. Dkt. # 18, at 14. Plaintiff has timely filed an objection to the report and recommendation.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

The agency has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. See id. Even if a claimant

5

is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided this case at step four of the analysis, but she made alternate findings at step five. Dkt. # 10-2, at 26-28. At both steps, the ALJ determined that plaintiff's claim for benefits should be denied. Id. The magistrate judge recommends that the ALJ's decision be affirmed. Dkt. # 18, at 14. Plaintiff objects to the magistrate judge's report and recommendation, presenting fifteen separate grounds for remand. See Dkt. # 19. As the Court finds that plaintiff's case should be remanded based on the ALJ's consideration and incorporation of the opinions of Dr. Karapetian and Dr. Smasal, the Court does not reach plaintiff's other arguments.

Plaintiff argues that the ALJ erred by adopting the opinions of Dr. Karapetian and Dr. Smasal selectively, accepting those portions supporting a finding of non-disability without considering or rejecting those portions supporting a finding of disability. "The record must demonstrate that the

ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009-10 (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Id. at 1010. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)). Reliance on some parts of a medical opinion favoring non-disability, without considering or rejecting other parts of the same opinion favoring disability, is reversible error. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); Smith ex rel. E.S.D. v. Barnhart, 157 F. App'x 57, 63 (10th Cir. 2005)[2]; Lawton v. Barnhart, 121 F. App'x 364, 375 (10th Cir. 2005).

A. Dr. Karapetian's Opinion

Plaintiff argues that the ALJ erred by ignoring those parts of Dr. Karapetian's opinion supporting a finding of disability, while relying on those parts supporting a finding of non-disability. Dkt. # 19, at 2. The ALJ discussed Dr. Karapetian's examination in her step two analysis of plaintiff's severe impairments. Dkt. # 10-2, at 18. She summarized Dr. Karapetian's findings as to plaintiff's physical abilities, noting that plaintiff moved all extremities well, that he "ambulate[d] with a stable gait at an appropriate speed without the use of assistive devices," and that he had no difficulty moving around the room. Id. at 18-19. However, the ALJ made no mention of the Folstein exam that Dr. Karapetian administered, or of Dr. Karapetian's statements about plaintiff's cognitive

---

[2]     Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

abilities. According to Dr. Karapetian's opinion, plaintiff's score of 19 on the Folstein exam is considered "[p]oor." Dkt. # 10-7, at 116. Dr. Karapetian also noted that plaintiff "did not remember his age and other significant events recently" and that his "thought processes appear slow and poor." Id. Although she made no mention of these portions of Dr. Karapetian's opinion, the ALJ assigned it great weight. Id. at 19.

The ALJ's decision does not demonstrate that the ALJ considered Dr. Karapetian's report in full at any stage of the analysis. The ALJ clearly relied upon Dr. Karapetian's findings as to plaintiff's physical abilities to support the conclusion that plaintiff does not suffer from a severe impairment of his arm, knee, or foot. See Dkt. # 10-2, at 18-19. While the ALJ did find that plaintiff possessed severe cognitive impairments at step two, it appears that those impairments were adopted directly from the psychological consultative examination of Dr. Smasal. See Dkt. # 10-7, at 40 (assessing plaintiff with "Mood Disorder NOS Both," "Alcohol Abuse in Remission Both," and "L[earning] D[isorder] NOS Both"). None of the severe impairments found at step two relates to plaintiff's memory or cognitive functioning, the areas in which Dr. Karapetian perceived plaintiff as limited.[3] Plaintiff's RFC likewise reflects Dr. Karapetian's physical, but not cognitive, conclusions. The ALJ determined that plaintiff "has the residual functional capacity to perform light work . . . . He is limited to simple routine tasks and only occasional contact with the public." Dkt. # 10-2, at 21. All of the restrictions in the RFC assessment are cognitive rather than physical, echoing Dr. Karapetian's findings that plaintiff was physically able but suffered from cognitive difficulties. However, the cognitive restrictions in the RFC assessment were adopted from the

---

[3]    In fact, the ALJ's decision at step two discusses only plaintiff's alleged physical impairments, with no analysis of plaintiff's cognitive impairments.

opinions of Dr. Smasal and Dr. Hartley, without any discussion of the effects that the cognitive impairments Dr. Karapetian described could have on plaintiff's ability to work. See Dkt. # 10-7, at 39, 98.

Obviously, Dr. Karapetian's cognitive observations favor a determination of disability, just as those relating to plaintiff's physical abilities favor a determination of non-disability. The ALJ did not discuss Dr. Karapetian's opinion outside of her step two analysis, and in that discussion the ALJ made no mention of his cognitive observations. The entirety of the ALJ's conclusions about plaintiff's cognitive abilities, and the restrictions placed on his ability to work, rest on the conclusions of Dr. Smasal and Dr. Hartley. Thus, there is no demonstration that the ALJ considered the results of the Folstein exam or Dr. Karapetian's statements about plaintiff's memory and cognition as part of her analysis. See Clifton, 79 F.3d at 1009-10. As noted above, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman, 362 F.3d at 681. While the ALJ could have rejected, or given less weight to, Dr. Karapetian's observations in light of the other evidence in the record, the ALJ's silence as to those statements while adopting Dr. Karapetian's physical findings is the type of "pick[ing] and choos[ing]" forbidden by Hardman. The Court will not assume that the ALJ in fact rejected Dr. Karapetian's statements about plaintiff's cognitive abilities absent an explicit statement, as such determinations are the province of the ALJ. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that courts should not engage in "post hoc justification of administrative action"). This case must be remanded to allow the ALJ to consider Dr. Karapetian's opinion in its entirety.

B. Incorporation of Dr. Smasal's Opinion

Plaintiff contends that the ALJ also erred by incorporating some, but not all, of the restrictions in Dr. Smasal's opinion into the RFC assessment. Dkt. # 19, at 9-10. A similar situation occurred in <u>Haga v. Astrue</u>, 482 F.3d 1205 (10th Cir. 2007). In that case, the ALJ relied on the testimony and examination report of a consulting mental health professional in formulating the claimant's RFC assessment. <u>Id.</u> at 1207. Using a mental RFC assessment form, the professional found the claimant moderately restricted in seven categories of work-related activity. <u>Id.</u> However, the ALJ incorporated only three of the seven restrictions into the claimant's RFC assessment, without explaining why those three were included and the remaining four were not. <u>Id.</u> The Tenth Circuit found it reversible error that the ALJ apparently adopted some, but not all, of the professional's limitations without explanation or citation to evidence conflicting with the professional's opinion as to the four limitations not included. <u>Id.</u> at 1208.

In her report, Dr. Smasal stated that plaintiff's "difficulties are likely to be better managed under supportive supervision and with proper intervention. No obvious barriers to his capacity to perform simple, routine tasks was [sic] readily noted." Dkt. # 10-7, at 39. The ALJ inserted this language almost verbatim into her decision. Dkt. # 10-2, at 24. However, the only restrictions in the RFC are as follows: "He is limited to simple routine tasks and only occasional contact with the public." <u>Id.</u> at 21. While Dr. Smasal's opinion is not the only medical opinion speaking to plaintiff's ability to complete tasks--Dr. Hartley's mental RFC assessment notes that he "can perform simple and some complex tasks," Dkt. # 10-7, at 98--it is clear from the ALJ's phrasing that she incorporated Dr. Smasal's restriction as to simple tasks into the RFC assessment. However, the ALJ

did not incorporate any restriction as to supervision,[4] nor did she provide any explanation for why such a restriction was not needed. The decision does not identify any other opinion addressing whether plaintiff needed increased supervision.[5] The VE's testimony that closer supervision would preclude employment underscores the importance of the ALJ discussing, and either accepting or rejecting, a restriction regarding supervision. See Dkt. # 10-2, at 63. Following Haga, the matter must be remanded to the ALJ for either a reformulation of the RFC assessment or an explanation of why the ALJ did not adopt Dr. Smasal's opinion in full. See Haga, 482 F.3d at 1208; see also Hardman, 362 F.3d at 681.

IT IS THEREFORE ORDERED that the report and recommendation (Dkt. # 18) is **rejected**, and the Commissioner's decision is **reversed and remanded** for further proceedings. A separate judgment is entered herewith

**DATED** this 27th day of February, 2015.

Claire V Eagl

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[4]     The magistrate judge distinguished between Dr. Smasal's two statements on the grounds that the statement about supervision was merely a comment, not a restriction. Dkt. # 18, at 7. However, it is clear from the ALJ's incorporation of Dr. Smasal's language regarding simple tasks that she interpreted that statement as a restriction. Without explanation from the ALJ, it would be incongruous to find the latter statement, but not the former, to be a restriction, given their proximity to one another and the lack of any explicit differentiation between the two.

[5]     The Court notes that, in the mental RFC assessment, Dr. Hartley found plaintiff not significantly limited in his "ability to accept instructions and respond appropriately to criticism from supervisors." Dkt. # 10-7, at 97. However, this does not address whether plaintiff needed closer supervision than other workers, only that he was not limited in accepting such supervision.